Good morning all. Our first case this morning is Juza v. Wells Fargo, Mr. Arroyo. May it please the court. My name is David Arroyo and I'm from the firm Lebensfeld, Schwerin & Schwartz. I'm here today on behalf of the plaintiff appellant, Mr. Thomas Juza, because the district court dismissed his complaint with prejudice before he had an opportunity to have his claims heard on the merits. And I'm here to hopefully assist the court in reaching what we submit is the correct conclusion that the district court erred as a matter of law, that the judgment should be vacated, and that Mr. Juza should be permitted to pursue his claims on the merits. And if your honors will permit me, I would like to frame my argument with respect to the errors through addressing dismissive breach of contract claims under the guarantee. I believe that I'll be able to address most of the issues that we have with the district court's decision that way. So we believe that there was error in dismissing the breach of contract claims under the guarantee. First of all, there is no contractual standing question. Mr. Juza is unequivocally a party. He personally signed that. There's no question that the complaint alleges facts, establishing that as a part of an overall transaction to sell his shares in the entity borrower to an even more qualified individual. He sought permission to assign his guarantee obligations to that individual, that the trust acting through his agents unreasonably refused to consent to the assignment of his guarantee obligations. Counselor, can I ask you to address the threshold question of why your client, who wasn't a party to the contract, can bring the suit? Well actually I'm talking right now, your honor, about the guarantee to which my client unequivocally was. Okay. Thank you, your honor. And as a result of the unreasonable refusal to consent to the assignment of the guarantee obligations, Tom Thomas lost his $5 million that was supposed to come to him directly upon the sale of his shares in the borrower. We submit that those facts establish breach of the guarantee, specifically section 5.6, which says that the defendants were required, they had the discretion to, the contractual discretion to either grant or deny his request to assign the guarantee. Yes, your honor? Oh, no, please go ahead. And because of that discretion, Illinois law implies a covenant, an obligation of good faith and fair dealing in implementing that discretion. And also to implement the reasonable expectations of the parties to the contract. And so to the extent that Mr. Yuzza was a party to the guarantee and he was subject to, he needed the approval of the bank or the lender to assign his guarantee obligations, he had a reasonable expectation that the transfer of his guarantee and ownership interest would be considered as one, and that's exactly how it was submitted, and that both requests would be addressed reasonably. Now we submit that the district court erred in finding that Mr. Yuzza did not sufficiently plead a cause of action because he failed to reference specifically section 5.6. The district court did not cite any cases, nor did my opposition, cite any cases requiring specifically that a contract provision be alleged. We did allege that there was breach of the guarantee. The guarantee is referenced as one of the main claims that we have, breach of the guarantee. That guarantee was also included in the opposition papers as an exhibit. It was before the district court. And so the district court should not have dismissed the claim, at least should not have done so with prejudice, when clearly on a simple amendment we would have been able to add reference to section 5.6 if that's what the court felt was required. And in all events, we submit that under the guidance in Gainoski that because of the guarantee, the guarantee was referenced in the complaint, and it was key to Thomas's claims, it is permitted for the district court to have considered it without having to require an amendment of the complaint. We submit that the judge also, the district court also erred when he held that section 2.13 of the guarantee constituted a waiver of his claims, specifically the claim for breach of the guarantee and the duty of good faith and fair dealing. Well, some of your claims are wiped out by the statute of limitations, is that correct? So with respect to KeyBank, we agree because they were not named as a party, and on further reflection, that's why we did not pursue that. However, when it comes to the contract claims of which good faith and fair dealing is one under Illinois law, that was preserved in Mr. Hughes' counterclaim. And so in terms of the waiver argument, or the finding that section 1.3 is a waiver of Mr. Hughes' claims, we submit that district court erred and that section 2.13 does not constitute a waiver of the claim of breach of the guarantee. If the court were to read section 2.13, the court would see that that provision simply waives Mr. Hughes' right to defend against his obligation to pay the underlying debt. So if his company had defaulted, then he would have to pay the money and he couldn't go into court and say, your honors, I shouldn't have to pay because of the malfeasance of the lender. He waived that according to section 2.13. He did not, however, waive his right to pursue his own independent claims that had nothing to do with any law specifically to Hughes it to. And the $5 million roughly that Mr. Hughes seeks would never have gone to the borrower. Let me make sure I'm following you. You are arguing, correct, that because he was the guarantor, that he has suffered a direct injury and that's why he can sue under the mortgage agreement, right? And you're relying on the Sylvester case for this accusation? That is one set of arguments. I haven't gotten to that, but that is another basis for it. But isn't that necessary? I mean, I guess I'm not following your argument. I thought that that was necessary for you to get where you're going now because you weren't a party to the mortgage agreement. Well, so that's why I was addressing, your honor, first the guarantee issue. We submit that the district court, even if the district court never got to whether we had standing under the mortgage, Mr. Hughes still had standing under the guarantee to bring claims under the guarantee to which he was a signatory and he signed in his individual capacity. If your honor would like me to discuss. But it's the guarantee. I mean, I just want to be sure I'm following your argument. I mean, he's not really pursuing a claim under the guarantee, right? I thought this was really all about the mortgage agreement and you were using the guarantee as an argument for why you could sue for breach in the other. Actually, your honor, that is one of the arguments that we did make, absolutely. However, and as we explained in our papers, not only before this court but also below, the Mr. Hughes does have an independent claim under the guarantee and that is one of the claims that was alleged. We said that Mr. Hughes, I'm sorry, the lender breached Mr. Hughes' rights under the mortgage, the guarantee, and the loan documents. So what my argument is, if you read the guarantee isolated, which is what my opponent suggests should be done, then Mr. Hughes nonetheless still has a viable claim that should not have been dismissed. With respect to whether he has claims under the mortgage, yes, we submit that the Sylvester case is the beginning of the law that says that a guarantor who suffers direct damages is permitted to seek his or her own remedies. That was just a line of dicta in Sylvester, right? I appreciate the fact that in Sylvester the court did make an alternate ruling as well and other courts have held that it was dicta. Even accepting that it's dicta, I believe that what the courts have done is they've articulated and they've continuously articulated for 20 or 30 years now a persistent principle that says that a guarantor has the right to pursue his claims against a lender for breach of the mortgage contract between the lender and the borrower, so long as the guarantor can assert their own direct injury. And in my opinion, from my reading of the cases, to me, that's another species of third party beneficiary law and I think that's an undercurrent in a lot of these cases. That's one of the reasons why it's persistent. Consistently courts have not said, we think that Sylvester is wrong law. They continually refer to it and they continually affirm it in that way. They might say, the facts of this particular case don't qualify for the Sylvester exception. However, they do reaffirm constantly that Sylvester exception and I think that Sylvester exception is consistent with generic third party beneficiary law. But even assuming that Sylvester, let's say that the Sylvester dicta from the Intermediate Appellate Court accurately reflects Illinois law, don't you still have the problem that the mortgage agreement barred third party guarantors? So, thank you, Your Honor. I submit no. The mortgage agreement, which is at section 45, it's a no third party beneficiary's provision. But under Illinois law, a no third party beneficiary provision is presumed to be, unless it's extremely specific, it's presumed to be unenforceable as, I'm sorry, I'm losing the word right now. If you compare the guarantee, which says that Mr. Yuza has the right to, he benefits from, he derives benefit from the guarantee, and you take a look at section 45 of the mortgage. Section 45 of the mortgage says that no one has any benefit at all under the mortgage or any of the loan documents. That is directly contradicted by two provisions of the guarantee that says Mr. Yuza specifically has the benefits from at least the guarantee agreement, which is one of the loan documents. Therefore, we submit that section 45 of the mortgage, people were not really paying attention to the details of that. It was really more boilerplate because if they had been paying attention to the whole transaction and they really cared so much about section 45, there would be no inconsistency between the language of section 45 and the specific language in the guarantee that says that Mr. Yuza qualifies for, he benefits under the guarantee agreement. Doesn't the guarantee have some kind of a waiver in it? Yes, Your Honor. And I thought that waiver kind of carved you out. Your Honor, we do not think so because the waiver, which is section 2.13, only deals with a waiver of claims against a bank, waiver pretty much of defenses. Any claims that would permit, to use colloquial terms, Mr. Yuza to weasel out of his obligation to pay the underlying debt. That if you read section 2.13, that is what section 2.13 is there to permit. Also, section 2.13 does not, even assuming that it was a waiver of claims, section 2.13 does not waive expressly a good faith and fair dealing claim, which is something that was expressly asserted in the complaint. Therefore, even if 2.13 operated as a waiver of claims, it certainly didn't operate to waive Mr. Yuza's right to bring a breach of contract claim under the good faith and fair dealing doctrine. Yes. Go ahead. Boilerplate was the word I was looking for, Your Honors, I'm sorry, boilerplate. Section 45 was boilerplate, and even if it's not boilerplate, it was ambiguous. That was the argument that I was making before, it was rendered ambiguous and contradictory by the language in the guarantee. And as I previously addressed before, Mr. Yuza does have standing under the mortgage itself under the line of cases of Sylvester and the other cases that follow it that came after it. But also, as I said before, we believe that Sylvester is another species of third-party beneficiary and that if you take a look at the facts and circumstances, you will see that he was intended to be a third-party beneficiary at least with respect to section 15 of the mortgage. Section 15 of the mortgage required Mr. Yuza to get permission from the lender in order to transfer his shares because the bank wanted Mr. Yuza to be the person to manage. Other portions of section 15, I believe, and the guarantee discuss that there will be no change of management without the approval of the lender. Mr. Yuza, to say, as the opposition does and as the district court found, that Mr. Yuza was not required to get the permission is, I think, putting elevating form over substance. Mr. Yuza specifically was required under the guarantee. He had a contractual obligation and that guarantee was a performance in payment, not just payment, but performance as well. He had an obligation to make sure that section 15 of the mortgage, which admittedly is emphasized in the complaint, he had an obligation to make sure that consent was requested. Otherwise, he would be personally liable under the guarantee for $17.5 million approximately. So to say that it's not expected that he would get permission when he would be the one to benefit, I think, is elevating form over substance. Can I just clarify, sir, you're abandoning your tort claims? Oh, sorry, Your Honor. No, we are not abandoning our tort claims. Number one- So you're not conceding that they're time-barred? Correct. We are not. We believe that the tort claims were saved by the consent order that was signed in Wisconsin because that consent order preserved all, the entire counterclaim. And the counterclaim is a pleading. And typically, when a pleading is asserted and other claims, someone seeks to amend the pleading to add claims, as long as those claims are based on the same facts and circumstances, generally, amendment is liberally granted. And the facts that are in the- Does that rewrite, I should say, rewrite the contract? I'm sorry? Doesn't that rewrite the contract added to whatever the original contract said? No. And I'm sorry, Your Honor, which contract would you- Well, the one you're referring to. You're totally depending on this warranty. No, I'm not. I'm saying that if we look at the district court's decision, we can address the errors through the erroneous dismissal of the guarantee. But we say, independently, that Mr. Usa does have standing under the mortgage itself as well. If Your Honors have no further questions, I'd like to reserve my time for rebuttal. Thank you, Mr. Arroyo. Thank you. Ms. Hatch. Good morning. May it please the Court. Amy Hatch here on behalf of the appellee, Wells Fargo Bank, N.A. It's a trustee of a securitized trust that's the lender in this matter. First off, I want to address the stipulation that was entered into in 2012. I think it is very clear, and Judge Griesbach agreed, that that stipulation was between the parties with respect to two claims. There was a claim asserted by the trust against Mr. Usa under the mortgage clause. Guaranteed. And there was a claim asserted by Mr. Usa against the trust with respect to breach of contract. And if you read the counterclaim carefully in 2012, it's very clear Mr. Usa's claim was a breach of the mortgage, his alleged breach of the due-on-sale clause, section 15. And what that stipulation said, and what the judge's dismissal order said, was those claims were dismissed without prejudice. And they were told for six years from the date of that order. But no other claims were told. As a result, two of the four claims brought, the tortious interference claims, failed as a matter of law because they were not brought within the applicable statute of limitations. That takes us to the breach of mortgage. Now, an argument I just heard right now, I think that there was a mention that he started with the fact that they're going to assert a claim against the breach of guarantee. First off, when you read the pleadings carefully, there was no claim for breach of guarantee. The claim was for the breach of the mortgage. And what's very clear is that Mr. Usa was not a party to that mortgage. He has no standing, and he was not a third-party beneficiary. There's discussion of this direct injury or some loss that he incurred. The problem that he has is what the Mid-States case very clearly states, is that a derivative claim cannot be brought. Illinois law is clear that a shareholder of a company has no right to assert a claim on behalf of that company. And that's exactly what they're trying to do by asserting a claim under the mortgage in this case. And we do that because of the idea of reverse bail piercing. This would allow Mr. Usa to somehow try and seek the benefits of the mortgage, but then hide behind the corporate entity and not be obligated under any of the obligations of that entity. This is why we do not allow for derivative liability. There must be some direct harm. Now, could Mr. Usa have a direct harm associated with this loss? Sure. But it's not under a breach of contract claim. It's not in connection with the breach of the mortgage. And that is the only claim he has left because all the other claims are barred under the statute of limitations. So we are in no way saying Mr. Usa had no claim at some point in time potentially under the set of facts that he's alleging. It's just that any alleged claim he potentially had is time barred. The only claim he has left is breach of contract, and that fails because he is not a party to the contract at issue. There was much talk with respect to the Sylvester case. I think that that case is unfortunate in one, the court very clearly says that standing was not an issue. The party in that case did not raise the guarantor's standing. And really, it is dicta in that that issue was not before the court. And then the Sylvester case also, or the Sylvester court also, just generically makes a statement about the Mid-States court saying that if there's a direct injury, a guarantor has a claim. Sure, that is what Mid-States said. But Mid-States also very clearly said if the injury is derivative, there is no claim. In this matter, Mr. Usa's claim under the mortgage is derivative. He has no valid claim personally. That takes us to the first argument that was reached today. Recognizing that he has no claim under the mortgage, what Mr. Usa is now trying to say is, well, wait, I have a claim under my guarantee. The problem is, is he does not have a claim under the guarantee. When you read that guarantee very carefully, it'll show at the onset there was some consideration. Yes, Mr. Usa, he received a benefit in the fact that his company received a $17.75 million loan. After receiving that benefit, however, the guarantee is clear. There are no duties owed to Mr. Usa under that guarantee. And that's exactly what Judge Griesbach recognized. Judge Griesbach recognized, one, this breach of guarantee claim. Questionable at best that it was asserted in 2012. Questionable at best that it was even preserved under that stipulated order. Really, a breach of guarantee claim should be barred under the statute of limitations, 10-year breach of contract claim. It would have been barred back in the summer of 2018, so it's not timely. And he also recognized that nowhere in this complaint is there mention in 2012 or in 2018 a breach of 5.6 of the guarantee. Then he also, which Judge Griesbach also got right, was the fact that when you look at the guarantee closely and what Janoski says is that, sure, if there are facts that you could plead that plausibly could give you a cause of action, perhaps that would be allowed. But here, there are no set of facts that would give Mr. Usa a claim under this guarantee because the lender owed him absolutely no duties under that guarantee. They're trying to articulate some type of duty with respect to this alleged membership transfer and the consent, whether or not that was allowed. Very clearly, Mr. Usa was in no way prohibited from transferring his membership interest in the borrower. What the mortgage says is if he chose to do that, the borrower would be in default under the loan. Sure, he chose, I don't want to put my borrower in default, so I'm not going to do that. But in no way does that limit his right. He could have entered into this transaction with Mr. Schmidt. There just would have been adverse consequences for him. And this does not give rise to the breach of this guarantee. What the guarantee says is that he cannot assign the guarantee obligations without lender's consent. That is something that he cannot do. It bestows no obligation on the part of the lender to agree to this assignment. So in sum, three of the four claims that are here are barred by the statute of limitations. And I should say I didn't address the breach of good faith and fair dealing claim, which is superfluous to the breach of contract claim. So those are one and of the same. So the two tort claims are barred by the statute of limitation. The breach of contract claim was properly dismissed because Mr. Usa has no standing under the mortgage, and he did not properly assert a claim against the guarantee. He did not do so because he has no ability to assert a claim under the guarantee, because there are no obligations owed to him under that guarantee. Thank you. Thank you. Mr. Arroyo. Thank you, Your Honor. I'd like to read section 5.6 of the guarantee. It says, and I'm eliding some, this guarantee shall be binding upon any newer to the benefit of the parties hereto, ellipses, provided that the guarantor may not, without prior written consent of lender, assign any of its rights, powers, duties, or obligation here under. This is a written contractual obligation that provides the lender with discretion to take an action. Because this written contract provides discretion, that discretion is subject to the duty of good faith and fair dealing. It is not duplicative or redundant to assert a claim of good faith and fair dealing. Part of asserting breach of 5.6 is asserting breach of the duty of good faith and fair dealing, which is, in part, a way of helping courts to understand or directing courts to understand each of the written provisions in the entire context of the transaction. And Illinois law says that a duty of good faith and fair dealing applies to all contracts, including guarantees. And the only way to waive such a claim of good faith and fair dealing is to do so expressly. And that was not done here. So to say, as respect to counsel for the appellees, that the lender owed no duty, that simply is not true. There was a written duty, which must be read in light of the duty of good faith and fair dealing, which are contract claims. And I understand that the argument that the stipulation itself doesn't specifically say that a breach of the guarantee claim is preserved. The order and stipulation below also don't say that a breach of contract claim is expressly preserved. It says that the counterclaim is preserved. And if the court were to look at the counterclaim itself, the counterclaim does not simply say that Mr. Yuza alleged breach of the mortgage. He said, KeyBank, and this is on Special Appendix 96, paragraph 5, following its receipt of these documents, KeyBank unreasonably delayed action on the demand to assume the mortgage and unreasonably failed to approve the assumption in breach of its loan agreement with the defendants. Now, the loan agreement is read broadly, the entire agreement. This was one transaction. And especially at the time that this was written, this pleading should be read broadly and should be construed in such a way. It should be given broad construction. Now, a comment was made about Sylvester being unfortunate. But respectfully, if Sylvester were unfortunate, I don't understand why cases for more than 20 years, 27 years, continue to cite it and continue to quote it. Again, I believe that Sylvester embodies a species of third-party beneficiary law. And I would like to point out to the court that there is in, I believe, in Performance Electric, in the, where Presiding Justice Thies specially concurs, specifically says that a guarantee must be supported by consideration just as any other contract would be, even though that consideration need not directly and personally benefit the guarantor. Here, the consideration for the guarantees was the loan to performance, meaning the company. At oral argument, counsel for plaintiffs admitted as much. In addition, the loan was expressly conditioned upon the guarantees. And without the guarantees, defendant would not have made the loan to performance. The general rule is that in the absence of evidence to a contrary intention, where two or more instruments are executed by the same contracting parties on the same course of the same transaction, the instruments will be considered together and construed with reference to one another. Your Honor, I submit that under Illinois law, all of the documents should be construed as one. And in terms of reverse veil piercing, that's not happening here. Mr. Uza is not trying to avoid liability for anything by jumping into his company. Mr. Uza simply is walking up to the lender and asking to have his damages vindicated. They're his personal damages. Reverse veil piercing is when a party seeks to hide behind, get inside his company to avoid liability. And that is not what is happening here. And with respect to MidState, respectfully, we believe that the appellees are reading that incorrectly, as I stated in my reply brief. Thank you very much. Thank you, Mr. Arroyo. Thank you, Mr. Abbott. Case is taken under advisement.